IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JIMMY ATES,
      Petitioner,

vs.                                 Case No.:  3:12cv590/MCR/EMT

MICHAEL D. CREWS,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2254 (docs. 1, 2).  Respondent filed an answer and relevant portions of the state court record (docs. 16, 17).  Petitioner filed a reply (doc. 33).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* docs. 16, 17).[1]  On June 25, 1997, Petitioner was indicted in the Circuit Court in and for Okaloosa County, Florida, Case No. 1997-CF-945, for the premeditated murder of

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (docs. 16, 17).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

his wife, Norma Jean Ates, on or about June 2, 1991 (Ex. A at 15–18). After being granted a new trial, Petitioner was found guilty as charged by a jury on March 10, 2011 (Ex. A at 7211, Ex. B). The following day, he was sentenced to life imprisonment with eligibility for parole after twenty-five (25) years (Ex. A at 7386–94, Ex. C).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D11-1565 (Ex. D). The First DCA affirmed the judgment per curiam without written opinion on July 25, 2012, with the mandate issuing August 28, 2012 (Exs. G, J). Ates v. State, 94 So. 3d 584 (Fla. 1st DCA 2012) (Table). Petitioner did not seek further review.

Petitioner filed the instant federal habeas action on December 13, 2012 (doc. 1).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" <u>Lockyer</u>, 538 U.S. at 73 (quoting <u>Williams</u>, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting <u>Williams</u>, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. <i>See</i> <u>Henderson v. Campbell</u>, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); <i>cf.</i> <u>Bell v. Cone</u>, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court

conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, *supra* at 1291 (citing Richter, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Richter, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s

"unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in

---

[3] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
         (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

each appropriate state court, alerting that court to the federal nature of the claim. <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982). In <u>Anderson</u>, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." <u>Anderson</u>, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364. The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to

mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . .  We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement. After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach. For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* <u>O'Sullivan</u>, 526 U.S. at 839–40, 848; <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* <u>Tower v. Phillips</u>, 7 F.3d 206, 210 (11th Cir. 1993); <u>Parker v.</u>

---

Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

claim." <u>McCleskey v. Zant</u>, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991)

(quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  To

satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation

has probably resulted in the conviction of one who is actually innocent." <u>Schlup v. Delo</u>, 513 U.S.

298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the

petitioner must show that it is more likely than not that no reasonable juror would have convicted

him." <u>Schlup</u>, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent
> person is extremely rare.  To be credible, such a claim requires [a] petitioner to
> support his allegations of constitutional error with new reliable evidence—whether
> it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical
> physical evidence—that was not presented at trial.

*Id.*  Although a habeas petitioner asserting a convincing claim of actual innocence need not prove

diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a

petitioner's proof of innocence.  *See* <u>McQuiggin v. Perkins</u>, — U.S. —, 133 S. Ct. 1924, 1935, 185

L. Ed. 2d 1019 (2013).  As the Court stated in <u>Schlup</u>, "[a] court may consider how the timing of

the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability

of . . . evidence [of actual innocence]." 513 U.S. at 332; *see also* <u>House</u>, 547 U.S. at 537.

Within this framework, the court will review Petitioner's claims.

IV.  PETITIONER'S CLAIMS

> <u>Ground One:  "The Court erred in failing to adequately instruct the jury that Ates had been
> previously convicted of the murder this jury now considered, in violation of Ates' Sixth
> Amendment Right of the United States Constitution."</u>

Petitioner alleges before his trial began, defense counsel requested that the trial court instruct

the jury that Petitioner was previously convicted of the murder for which he was again on trial (doc.

1 at 4, 7–10; doc. 2 at 9–14).[7]  Defense counsel argued that although the State opposed the need for

a jury instruction, such an instruction was necessary to minimize the effect of any publicity

regarding the retrial (*id.*).  Petitioner alleges the trial court also expressed concern about pretrial

---

[7] The page references to the parties' filings reflect the page numbers as enumerated in the court's electronic
docketing system rather than those the parties may have assigned.

publicity, and that the jurors would want an explanation as to why the trial was being held so long after the offense conduct and indictment, and why some of the trial exhibits had old date stamps from the previous trial (*id.*). Petitioner asserts the trial court directed the parties to submit a proposed Weber[8] instruction, and the parties did so (*id.*). Petitioner asserts the trial court chose the State's proposed instruction and gave that instruction to the prospective jurors prior to voir dire (*id.*).

Petitioner contends the prospective jurors' exposure to the fact that he had been previously tried and convicted of the same charge raised a presumption that they would not be able to fairly consider the issue of his guilt, and the Weber instruction was insufficient to admonish the prospective jurors and assure the court that the information would play no part in the verdict (*id.*). Specifically, Petitioner argues the Weber instruction failed to inform the prospective jurors that the reason for the reversal of his first conviction was not simply a "technicality," but that the State agreed that a new trial was warranted based upon new information that developed after the first trial

---

[8] In Weber v. State, 501 So. 2d 1379, 1383 (Fla. 3d DCA 1987), the Florida Third District Court of Appeal held that exposure of seated jurors to prejudicial material, though not *ipso facto* requiring that a mistrial be granted or that jurors so exposed be stricken, raises a presumption that jurors will no longer be able to fairly consider the issue of the defendant's guilt, and this presumption may be overcome only if the court specifically and meaningfully admonishes the jurors in the very strongest of terms, and the jurors assure the court, with a solemnity befitting their oaths, that the information which wrongfully came to them will absolutely play no part in their verdicts. Regarding the sufficiency of the court's admonishment, the court stated:

> [A]n ordinary admonition, as in [United States v.] Williams, [568 F.2d 464, 465 (5th Cir. 1978)] that is indistinguishable from other admonitions given during the trial to disregard everything not heard in court, or one, as in Cappadona [v. State, 495 So. 2d 1207 (Fla. 4th DCA 1986], that is indistinguishable from other admonitions given during the trial to disregard media reports of the trial, are not, as a matter of law, sufficiently specific, meaningful or strong to impress upon jurors the unfairness of their considering the prejudicial information. Similarly, an inquiry designed to elicit a simple yes or no response to the question whether the information will influence the juror's verdict or whether the juror is capable of putting the information out of his mind is much too perfunctory to be accepted in any case, much less one in which, as here, juror disobedience of the court's previous instructions has led to the receipt of the prejudicial information. In such a case, jurors are likely to believe that an answer indicating that they are able to carry on their duties despite their receipt of the prejudicial information is expected by the court in expiation of the sin of having disobeyed the court's instructions and having caused the predicament that could lead to possible mistrial.

501 So. 2d at 1383–84. The court noted, however, "[c]ases involving a full, complete, and incisive voir dire examination of prospective jurors who, without having disobeyed the court's instructions, are aware of information that the defendant was previously convicted of the crime for which he is standing trial are thus distinguishable." *Id.* at 1384 n.5 (citing Patton v. Yount, 467 U.S. 1025, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984) and Hughes v. State, 490 A.2d 1034 (Del. 1985)).

(*id.*).  He contends this explanation was especially important, because one of the State's witnesses, Mr. Don Ward, would testify that several months prior to Mrs. Ates's murder, Petitioner commented, "[I]f you were smart enough and planned it well enough you could get away with murder with the judicial system being the way it was." (*id.*).  Petitioner additionally contends the trial court's admonishment was insufficient, and its inquiry into juror bias was too perfunctory to overcome the presumption that the information concerning his prior conviction was prejudicial (*id.*).  Petitioner relies upon the following Supreme Court cases as clearly establishing that the trial court's Weber instruction was constitutionally inadequate to assure that he was tried by a fair and impartial jury:  Irvin v. Dowd, 366 U.S. 717, 722 (1961), Murphy v. Florida, 421, U.S. 794, 800 (1975), Sheppard v. Maxwell, 385 U.S. 333, 363 (1966), Marshall v. United States, 360 U.S. 310 (1959), and Patterson v. Colorado, 205 U.S. 454 (1907) (doc. 2 at 9–14; doc. 33 at 2–4).

Respondent contends the jurors were adequately instructed and properly admonished (doc. 16 at 7–14).  Respondent further contends Petitioner was able to voir dire all of the prospective jurors in the courtroom, and he was then permitted to conduct a voir dire in chambers of all prospective jurors who had indicated they had previous knowledge of the case (*id.*).  After the voir dire in chambers, both sides exercised for-cause and peremptory challenges, and Petitioner made no objection prior to the jury being sworn (*id.*).  Respondent contends the jury instruction issue is purely a matter of state law, and Petitioner failed to show that the Weber instruction rendered his entire trial fundamentally unfair; therefore, his claim does not raise an issue of constitutional dimension (*id.*).

Respondent further contends Petitioner failed to cite any United States Supreme Court case holding that a particular jury instruction must be given in the case of a retrial to ensure that the jurors are impartial and do not consider the fact that the defendant was previously convicted of the same charge (*id.*).  Respondent contends Petitioner's reliance upon Weber (a state court case), and Williams (a Fifth Circuit case) is insufficient to satisfy the "clearly established federal law" standard of § 2254 (*id.*).  Further, the Supreme Court cases addressing the issue simply hold that the Constitution requires that a defendant have a panel of impartial, indifferent jurors, and that an opportunity for adequate voir dire is necessary to ensure that partial jurors are removed (*id.* (citing

Murphy, 421 U.S. at 799; Rosales-Lopez v. United States, 451 U.S. 182, 188, 101 S. Ct. 1629, 68 L. Ed. 2d 22 (1981))).

The state court record shows that prior to trial, the State filed a motion in limine to preclude the presentation of any evidence that Petitioner had been previously tried and convicted of the same offense (*see* Ex. A at 7615–16). The trial court held a hearing on the motion in limine on June 24, 2010 (*id.* at 7610–7820). At the beginning of the hearing, over which Judge Stone presided, Judge Stone indicated he was troubled by the fact that the indictment and numerous exhibits, which would be shown to the jury, had either date stamps from the first trial in 1998 or other information indicating that the crime occurred in 1991, and that Petitioner was charged with it in 1997 (*id.* at 7616–17). Judge Stone also noted the likelihood that the jury would infer from some witness testimony that Petitioner was previously tried and convicted for the same offense and "got off on a technicality" (*id.* at 7618–19). Judge Stone also noted a short article was published in the local newspaper regarding the new trial (*id.* at 7617). The court expressed concern that a mistrial could occur if the trial proceeded to deliberations and then the jury raised a question about the prior trial (*id.* at 7617–20). Judge Stone suggested prophylactic action in the form of a jury instruction at the commencement of voir dire (*id.*). Judge Stone opined that the instruction should be worded to prevent any inference that Petitioner "got off on a technicality" the first time; and he suggested that voir dire be structured to divine any bias or prejudice a potential juror may have upon being informed of the prior trial and conviction (*id.*). During the hearing, defense counsel had the opportunity to discuss the issue with Petitioner (*id.* at 7802–03), and announced that the defense requested that the subject of the prior trial and conviction be addressed at voir dire, including the court's inquiring who on the panel was aware of Petitioner's prior trial, and providing the defense an opportunity to question any juror who had such awareness to "ferret[] out" any prejudice or bias (*id.* at 7803). Petitioner was then placed under oath and affirmed that counsel had explained the "positives and negatives" of instructing the potential jurors of the fact that he had been previously tried and convicted of the crime, and that the present trial was a new trial on the same charge, and he affirmed that he agreed with counsel's decision that such an instruction should be given (*id.* at 7805–08). The court concluded the hearing by directing the parties to submit a proposed Weber instruction and voir dire question (*id.* at 7809). At a hearing four days later, on June 28, 2010, over

which Judge Stone again presided, the <u>Weber</u> instruction was again discussed; however, the court did not rule on the issue (*id.* at 7824, 7826–34).

The <u>Weber</u> instruction was again addressed at a pre-trial hearing on December 30, 2010, prior to which each of the parties submitted a proposed <u>Weber</u> instruction (Ex. A at 7583–87). Petitioner asserts, and Respondent does not dispute, that the substance of the instruction proposed by the defense was the following:

> Members of the panel, the circumstances which are the subject matter of the charge in this case arose in June, 1991.
>
> In 1997, an Indictment was brought charging Mr. Ates with Murder in the First Degree.
>
> In September 1998, the case proceeded to trial and a conviction was obtained against Mr. Ates.
>
> Since that time additional information has been developed resulting in the State of Florida joining the Defendant in a request for a new trial.  The court has granted that request.
>
> We are now beginning that new trial.  I instruct you now that the former trial of this cause or the result of that former trial should play no part in your decision as to whether Mr. Ates is not guilty or guilty in this trial.
>
> This case is to be tried solely upon the evidence and testimony brought to you by the parties in this courtroom through the testimony of witnesses or the presentation of physical evidence.
>
> There can and should be no discussion or consideration by any of you concerning the prior trial, nor should you speculate about the reasons the parties agreed to a new trial.
>
> It would be a violation of your oath as a juror to be influenced in any manner by anything other than the testimony and evidence that you hear and see in this courtroom.
>
> If any of you has concerns that you may not be able for any reason to be able to reach an entirely independent determination of this case on the merits of this case without consideration of matters other than those seen and heard outside [sic] this courtroom, and without consideration of the earlier trial, then you are bound by your oaths to advise this court of those concerns.

I will need a solemn assurance from each of you, individually, that if chosen as a juror you will without reservation honor your oath and confine your attention and deliberations to the evidence and testimony produced in this trial alone.

Mr. Ates is presumed innocent. Your task in this case, if chosen, will be to receive and weigh the evidence carefully from a fresh perspective in a manner consistent with the law as I instruct you and to reach your own decision based upon your own evaluation of the evidence. This responsibility to reach your own conclusions cannot be delegated nor should it be affected in any way by matters outside of this courtroom.

Question to each juror: Juror # ___, can and do you assure this Court upon your oath that you will reach a fair and independent determination of the issue in this case based on the evidence you receive and the law as I instruct you without consideration whatsoever of an earlier proceeding, medical coverage, rumor, or gossip?

(doc. 1 at 8–9).

The State's proposed <u>Weber</u> instruction was the following:

Members of the panel, the circumstances which are the subject matter of the charge in this case arose on June 2, 1991.

In September 1998, this case proceeded to a jury trial where the defendant was found guilty.

Subsequent to that trial, the defendant was granted a new trial. I instruct you now that the former trial of this cause or the result of the former trial should play no part in your decision as to whether the defendant is found guilty or not guilty in this trial.

This case is to be tried solely upon the evidence and testimony brought to you by the parties in this courtroom.

There should be no discussion or consideration by any of you concerning the prior trial, nor should you speculate about the reasons the defendant was granted a new trial.

I will need a solemn assurance from each of you, individually, that if chosen as a juror you will without reservation honor your oath and confine your attention and deliberations to the evidence and testimony produced in this trial alone.

(doc. 1 at 7–8; doc. 17, Ex. E at 5–6).

A different judge, Judge Flowers, presided over the trial proceedings. On February 28, 2011, before jury selection began, the parties argued their positions regarding their proposed <u>Weber</u> instructions. Defense counsel argued that the defense's proposed <u>Weber</u> instruction included language suggested by Judge Stone, that is, that the State agreed to the new trial (Ex. B at 46). Defense counsel also noted that Judge Stone had indicated, off the record, that he was inclined to choose the State's shorter version of the <u>Weber</u> instruction (*id.*). Defense counsel argued the State's version was not sufficiently forceful and did not adequately counteract the prejudice associated with the fact that there was a prior trial and conviction (*id.* at 46–47). The State reiterated its objection to any <u>Weber</u> instruction, but argued that if the court determined an instruction was necessary, the State's proposed instruction should be given (*id.* at 47–48). The court ruled as follows:

> The court is aware that the State objects to the <u>Weber</u> instruction The court will give the <u>Weber</u> instruction. The court finds that the proposed <u>Weber</u> instruction submitted by the State is very clear with respect to the [admonishment that the] result of the former trial should play no part in this jury's decision whatsoever. It makes clear to the jury that the case is to be tried solely upon the evidence brought in this courtroom. The court finds that it is adequate, not only is it adequate, it is formulated in a way to make the jury's duty very clear and it is not confusing and it is the court's instruction as I indicated out of court, but, however, Mr. McGuinness [defense counsel] [I] wanted you to have the opportunity to make very clear your position and I believe you made that position clear earlier before Judge Stone. I was present that day and listened to those arguments, have reviewed those arguments and his decision and this court finds, as Judge Stone did, that this is the appropriate <u>Weber</u> instruction.

(*id.* at 48–49). Defense counsel inquired as to when the court would give the instruction, and whether the court intended to inquire of each juror as to whether he or she would give a solemn assurance in these matters (*id.* at 49). The court responded:

> No, but I'm going to ask the jury as a whole if they're willing to do so. During voir dire they will—they will know what the instruction is. It is not my intention to individually question each juror whether or not they will give a solemn promise. However, it will be clear at the end of voir dire that they will have done so, but that is the answer to your question.
> . . . .
> When the jurors come in we will instruct the jury as to what proceeding or why we are here. I will give them the basic 1.1 instruction. I will then tell them what case we are here on, why we are here, and I will give them the <u>Weber</u> instruction at that time.

(*id.* at 50).

   After other preliminary matters were addressed, the prospective jurors were sworn, and the court instructed them that they must decide the case only on evidence presented "in this courtroom" (Ex. B at 57). The court instructed that if they were chosen for the actual jury, they must not communicate with anyone about the case or obtain any information about the case from sources outside the courtroom (*id.* at 57–58). The court explained the purpose and process of voir dire and juror challenges (*id.* at 58–59). The court read the indictment (*id.* at 60). The court then gave the following <u>Weber</u> instruction:

> Now, members of the jury, I will further instruct you that the circumstances that are the subject matter of this trial arose on June 2, 1991. In September, 1998 this case proceeded to a jury trial where the defendant was found guilty. Subsequent to that trial, the defendant was granted a new trial. We are now beginning that new trial. I instruct you now that the former trial in this cause or the result of the former trial should play no part in your decision as to whether the defendant is found guilty or not guilty in this trial. This case is to be tried solely upon the evidence and testimony brought to you by the parties in this courtroom. There should be no discussion or consideration by any of you concerning the prior trial, nor should you speculate reasons the defendant was granted a new trial.

> Before you can serve on this jury I will need a solemn assurance from each of you individually that if chosen as a juror, you will, without reservation, honor your oath and confine your attention and deliberations to the evidence and testimony produced in this trial alone.

> Now, you have heard the charges made—that are being made against the defendant and I will ask this question and don't speak up but by show of hands for the attorneys, do any of you know anything about this case either through your own personal knowledge, rumor, or by discussion with anyone else by show of hands? If you'd be kind enough to keep those hands up so the attorneys can make a note. They're going to wish to inquire about that knowledge. . . .

> Okay. Have any of you read or heard about this case from any kind of news media? If so, if you'd be kind enough to raise your hand so these attorneys can see because they're going to, if they wish, ask about what you have read and if it would influence you in any way.

(Ex. B at 60–62).

Counsel for the parties conducted voir dire of the panelists, with Petitioner present. During the State's questioning, the State told the prospective jurors that if they were selected to serve, they would swear to an oath that required them to consider only the evidence presented in the courtroom and not any outside fact (Ex. B at 101–04). The State asked the prospective jurors whether the fact that the murder occurred nearly twenty (20) years ago caused anyone to form an opinion about the case (*id.* at 97). One of the prospective jurors who answered affirmatively, Ms. McInnis, was later excused from the panel (*id.* at 98–100, 108–09, 144–49). Another, Mr. Lofquest, was later stricken for cause due to health issues (*id.* at 98, 154–56, 301–02). Another panelist who answered affirmatively, Mr. Sanders, was later stricken by the defense (*id.* at 106–07, 307–08). The State questioned whether any prospective juror could <u>not</u> base his or her decision solely on the evidence presented in the second trial, and no one responded that they would be unable to do so (*id.* at 122).

Defense counsel conducted extensive voir dire, including questioning whether any prospective juror felt that for any reason, including information they read in the newspaper or the fact that Petitioner was charged with killing his wife in 1991, he or she could not fairly and honestly listen to the evidence and render a just verdict (Ex. B at 207). Mrs. Burgess responded that personal reasons (her pregnancy was considered "very high risk," and her daughter had passed away three months prior) would prevent her from giving the facts and evidence her full attention (*id.* at 67–69, 151, 208). Mr. Triarchis stated he was unsure he could give the case his full attention due to his medical condition (he had cancelled two necessary medical appointments to appear for jury selection and would have to cancel several more if he served) (*id.* at 82–84, 151–53). Mr. Lofquest stated that serving on the jury would jeopardize his health (*id.* at 154–56). All three of these panelists were later stricken for cause (*id.* at 301–02).

After voir dire in the courtroom, all prospective jurors who indicated they had previous knowledge of the case were individually questioned by counsel in chambers, with Petitioner present (Ex. B at 240–95). Mr. Harper, who was later selected to serve on the jury, stated a couple of days prior he had seen an article in the newspaper announcing the retrial in the case (*id.* at 258–59). He stated the article did not go into any of the facts of the case (*id.* at 260). Mr. Harper stated the article would not affect his ability to reach a decision based on the evidence presented, and he would refrain from discussing what he read with other jurors (*id.*). Mr. Grant, who was also selected for the jury,

stated he saw an article in that morning's newspaper (*id.* at 275). He also stated he recalled reading an article several months prior stating that Petitioner was granted a new trial because ballistic evidence that had been used in the original trial had been "thrown out" (*id.* at 276–77). He stated he recalled reading that the victim was shot numerous times, allegedly by Petitioner, and that a fire was set as a "cover" to allow Petitioner time to get to a school ceremony (*id.* at 277–78). Mr. Grant stated he did not accept the information in the article as fact, and he "[would] never accept anything as facts from the newspaper" (*id.* at 278). Defense counsel asked Mr. Grant whether he could put that information out of his mind and base a decision on what is produced in the courtroom, and Mr. Grant responded, "absolutely" (*id.* at 278–81). No one else who indicated they were exposed to publicity about the case was selected for the jury.

After voir dire, Petitioner discussed the panel of sixty (60) prospective jurors with his counsel (Ex. B at 295–97). Prior to reconvening in the courtroom, the court excused, with the agreement of the parties, Mr. Newton; although the reason for doing so not indicated in the record (*see id.* at 306). The proceedings reconvened in the courtroom (*id.* at 297). At sidebar, with Petitioner present, the parties exercised for-cause and peremptory challenges (*id.* at 298–315). The parties and the court agreed to strike Mrs. Burgess, Mr. Triarchis, and Mr. Lofquest for cause (*id.* at 301–02). They also agreed to strike Ms. Seals for cause, because she stated she would not give the content of former testimony, as opposed to live testimony, a "fair ear" (*id.* at 126–27, 303). Ms. Kimmons was also stricken for cause for cause, because serving on the jury would create a personal hardship (*id.* at 204–05, 309–10). The persons selected for the jury were Ms. Varnado, Mr. Harper, Mr. Grant, Mr. Tobias, Ms. Adams, and Ms. Nelson, with Mr. Jones and Mr. Monk as alternates (*id.* at 315, 317). The court inquired of Petitioner whether he had an adequate opportunity to consult with counsel during the jury selection process, whether counsel had listened to his input, and whether he felt that jury selection had been appropriately handled, and Petitioner responded, "Yes, sir" (*id.* at 316). The trial court instructed the jury not to discuss the trial with anyone and to avoid all media reports (*id.* at 319). The court stated it would repeat the admonishment every time the jury was dismissed (*id.* at 321).

When the trial proceedings reconvened the following morning, March 1, 2011, the court excused one of the alternates, Mr. Monk, upon agreement of the parties, due to financial hardship

(Ex. B 71–72, at 322–23, 342–46). The proceeding before the jury commenced, with the court giving preliminary jury instructions, including the instruction that the verdict must be based solely on the evidence or lack of evidence and the law (*id.* at 353, 356–57). Defense counsel did not object to the instructions, nor did counsel request any additional instruction (*id.* at 360).

        1.        Clearly Established Federal Law

The Constitution guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent" jurors. Irvin v. Dowd, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961). The verdict must be based upon the evidence developed at the trial. *Id.* (citation omitted). A juror who has formed an opinion before hearing the evidence cannot be impartial. *Id.*

The Supreme Court has presumed juror partiality in rare cases, and it is those cases upon which Petitioner urges this court to rely. For example, in Marshall v. United States, 360 U.S. 310, 79 S. Ct. 1171, 3 L. Ed. 2d 1250 (1959), the Supreme Court set aside a federal conviction for unlicensed dispensing of drugs where the jurors were exposed to newspaper articles concerning the defendant's prior convictions for practicing medicine without a license. 360 U.S. at 312–13. The Court reasoned that the trial judge had ruled the information so prejudicial that it could not be offered as evidence, and the prejudice was as great or greater when the information reached the jurors through a source "not tempered by protective procedures." *Id.* The Court reached this conclusion despite the fact that the trial judge had individually summoned each juror into chambers and inquired if they had seen the articles, and each juror told the judge he would not be influenced by the news articles, he could decide the case only on the evidence of record, and he felt no prejudice against the defendant. *Id.* at 312.

Likewise, in Irvin v. Dowd, 366 U.S. 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961), the Supreme Court set aside the conviction where the trial court excused over half of a panel of 430 persons because their opinions of the defendant's guilt were so fixed that they could not be impartial, and 8 of the 12 persons seated on the jury had an opinion that the defendant was guilty and were familiar with the material facts and circumstances involved, including the fact that other murders were attributed to him, some going so far as to say that it would take evidence to overcome their belief. 366 U.S. at 728. One juror stated he "could not . . . give the defendant the benefit of the doubt that he is innocent." *Id.* Another stated that he had a "somewhat" certain fixed opinion as to

the defendant's guilt.  *Id.*  Each juror indicated that he could render an impartial verdict despite exposure to prejudicial newspaper articles, but the Supreme Court was unconvinced:

> Where so many, so many times, admitted prejudice, such a statement of impartiality can be given little weight.  As one of the jurors put it, "You can't forget what you hear and see."  With his life at stake, it is not requiring too much that petitioner be tried in an atmosphere undisturbed by so huge a wave of public passion and by a jury other than one in which two-thirds of the members admit, before hearing any testimony, to possessing a belief in his guilt."

*Id.*

In Sheppard v. Maxwell, 384 U.S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966), the Court presumed the defendant's murder trial was prejudiced when television exposed the community repeatedly and in depth to the spectacle of the defendant personally confessing in detail to the crimes with which he was charged.  The trial judge had stated "suggestions" and "requests" that the jurors not expose themselves to media coverage of the case, but he did not adequately direct them not to read or listen to anything concerning the case.  384 U.S. at 353.  An additional factor which prejudiced the trial was the trial judge's failure to control disruptive influences in the courtroom. *Id.* at 355.  As the Supreme Court put it, "bedlam reigned at the courthouse during the trial," and the news media "took over practically the entire courtroom, hounding most of the participants in the trial."  *Id.*  A press table was erected inside the bar, with over twenty (20) reporters sitting at it.  *Id.* The trial judge lost his ability to supervise the environment, which caused frequent confusion and disruption of the trial, and "constant commotion" within the bar.  *Id.*  The Court held that the trial judge's failure to fulfill his duty to protect the defendant from the inherently prejudicial publicity which saturated the community and to control disruptive influences in the courtroom rendered the trial fundamentally unfair.  *Id.* at 363.

Years later, in Murphy v. Florida, 421 U.S. 794, 802, 95 S. Ct. 2031, 44 L. Ed. 2d 589 (1975), the Supreme Court reiterated the rule that juror exposure to information about a defendant's prior conviction or to news accounts of the crime with which he is charged do not, alone, presumptively deprive a defendant of due process, and jurors' indicia of impartiality may be disregarded only in the case where "the general atmosphere in the community or courtroom is sufficiently inflammatory."  In Murphy, the Court determined the defendant was not denied a fair

trial where although some jurors vaguely recalled the offense at issue and each had some knowledge of the defendant's past crimes, none of the jurors betrayed any belief in the relevance of the defendant's past to the crime at issue, and there was no indication, either from circumstances surrounding the trial or number of the panel excused for prejudgment of the defendant, of the existence of an inflamed community sentiment so as to counter the indicia of impartiality disclosed by the voir dire transcript.

In Dobbert v. Florida, 432 U.S. 282, 303, 97 S. Ct. 2290, 53 L. Ed. 2d 344 (1977), the Supreme Court rejected the federal habeas petitioner's argument that the quantum of extensive media coverage in the community, alone, was sufficient to invoke the presumption of juror partiality. The Court noted the defendant failed to identify any portion of the trial record, in particular the voir dire, which required a finding of constitutional unfairness either as to the method of jury selection or as to the character of the jurors actually selected. *Id.* The Court held that under the "totality of circumstances," the petitioner failed to convince the Court that the state court was wrong in finding no constitutional violation. *Id.* (citing Murphy, 421 U.S. at 798).

2.      Federal Review of State Court Decision

Where the federal habeas petitioner's claim is merely that a jury instruction was incorrect under state law, federal habeas relief is not available. *See* Estelle v. McGuire, 502 U.S. 62, 71–72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). Accordingly, the federal habeas court reviews an error in state jury instructions in the § 2254 context solely to determine whether the alleged error was so critical or important to the outcome of the trial that it rendered the entire trial fundamentally unfair. Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 690 (11th Cir. 2005) (quotations omitted); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).

As previously discussed, Petitioner claims that the Weber instruction violated his right to a fair trial, because if failed to inform the jurors that the reason for the reversal of his first conviction was that new information had been developed which resulted in the State's agreement that a new trial was warranted. He contends absent this explanation, the jurors were left to assume that the new trial was the result of his "getting off on a technicality," and this assumption rendered them partial toward his guilt. Petitioner further contends the trial court's admonishment was insufficient, and its inquiry into juror bias too perfunctory to overcome the presumption that the information

concerning his prior conviction prejudiced the panel.  Petitioner raised this issue on direct appeal of his conviction (Ex. D).  The First DCA affirmed the judgment of conviction without written opinion (Ex. G).

Determining whether the First DCA's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the First DCA explaining its reasoning. *See* Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1253–54 (11th Cir. 2002).  A state court need not cite or even be aware of Supreme Court cases under § 2254(d).  *See* Early, 537 U.S. at 8.  Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  *See* Richter, 131 S. Ct. at 784.

In the instant case, there is nothing in the state court record that suggests the general atmosphere in the community or the courtroom was sufficiently inflammatory to invoke a presumption of juror partiality.  There is no evidence that the news stories about the retrial contained any confession or other blatantly prejudicial information.  There is no evidence of a "huge wave of public passion" against Petitioner, or that any of the jurors admitted, before hearing any testimony, to possessing a belief in Petitioner's guilt, other than perhaps Ms. McInnis, who was excused from the panel.  As in Murphy, there is no indication, "either from circumstances surrounding the trial or number of the panel excused for prejudgment of the defendant, of the existence of an inflamed community sentiment so as to counter the indicia of impartiality disclosed by the voir dire transcript."  Additionally, despite Petitioner's argument to the contrary, the language of the Weber instruction itself was not inherently prejudicial simply because it did not explain that the retrial was the result of new information which the State agreed warranted a new trial.

Further, the Weber instruction strongly and specifically admonished the prospective jurors that (1) the former trial or the result of the former trial should play no part in the decision as to whether Petitioner is found guilty or not guilty in the current trial; (2) the current case was to be tried solely upon the evidence and testimony brought to the jury by the parties in the courtroom; (3) the prospective jurors should not discuss or consider the prior trial, nor should they speculate reasons Petitioner was granted a new trial, and (4) before any of them could serve on the jury, the court would require a solemn assurance from each of them individually that if chosen as a juror, he or she

would, without reservation, honor the oath and confine his or her attention and deliberations to the evidence and testimony produced in the current trial alone.  Throughout voir dire, the State and defense counsel reiterated the court's admonishment that the case must be decided only on the evidence and law presented at that trial.  The parties conducted extensive voir dire regarding any preconceived opinions or biases the prospective jurors may have had concerning the fact that Petitioner was previously convicted of the crime for which he was standing trial, and whether each juror could base his or her decision solely on the evidence presented at the current trial.  Additionally, counsel conducted full, complete, and incisive individual voir dire examination in chambers of each prospective juror who had indicated previous knowledge of the case or exposure to pre-trial publicity.  Following voir dire, both sides freely exercised challenges.  Petitioner was present during the entire jury selection process, had an opportunity to participate through counsel, and unequivocally stated he was satisfied with the jury selection process.

The record contains no indication of the existence of prejudicial circumstances sufficient to counter the indicia of impartiality disclosed by the voir dire transcript.  Therefore, Petitioner failed to demonstrate that the state court's rejection of his claim of constitutional error with regard to the jury's knowledge that he was previously convicted of the crime for which he was standing trial, was contrary to or an unreasonable application of clearly established federal law.  Accordingly, he is not entitled to federal habeas relief on Ground One.

B.      Ground Two:  "The Court erred in allowing Don Ward to testify that Ates has said [sic] several months prior to the death of his wife that 'if you were smart enough and planned it well enough you could get away with murder with the judicial system the way it was' in contravention to Ates' Fifth Amendment Right of the United States Constitution to a fair trial."

Ground Three:  "The Court erred in permitting Nurse Pohlpek to testify that in her experience Ates did not demonstrate behavior consistent with a person who had recently lost a loved one, contrary to the requirements of Ates' Fifth, Sixth, and Fourteenth Amendment Rights of the United States Constitution."

Ground Four:  "The court erred in permitting Agent Kevin Kelm to testify that in his experience and research, the crime scene did not appear to involve a burglary, contrary to Ates' Fifth, Sixth, and Fourteenth Amendment Rights of the United States Constitution."

Ground Five: "The court erred in denying Ates' Motion and Renewed Motion for Judgment of Acquittal because the State presented insufficient evidence that Ates and no one else killed Ates' wife, contrary to the Fourteenth Amendment to the United States Constitution."

Petitioner asserts he raised each of these claims on direct appeal of his conviction (doc. 1 at 4–6).

Respondent contends Petitioner failed to fairly present a federal claim as to any of these grounds on direct appeal of his conviction (doc. 16 at 14–18). Respondent asserts Petitioner made no reference to any federal claim, federal constitutional provision, or federal case law, and instead relied solely on state law (*id.*). Respondent further contends the claims are now procedurally barred (*id.*). Respondent additionally contends Petitioner's claim regarding the sufficiency of the evidence to rebut a reasonable hypothesis of guilt (asserted in Ground Five) is solely a matter of state law (*id.*). Therefore, Petitioner is not entitled to federal review of Grounds Two through Five (*id.*).

In Petitioner's reply, he concedes his federal claims were not fairly presented to the state courts (doc. 33 at 4–5, 9). Petitioner states his appellate counsel drafted and submitted the initial appellate brief without Petitioner's review or consultation (*id.* at 4–5). Petitioner concedes the initial brief referenced only state law cases and violations of state law, and thus exhausted only state law claims, which are not cognizable on federal habeas (*id.* at 5). Petitioner argues his appellate counsel was ineffective for failing to raise the issues as federal claims (*id.* at 6–9). He relies upon <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012), <u>Coleman v. Thompson</u>, 111 S. Ct. 2546 (1991), and <u>Strickland v. Washington</u>, 104 S. Ct. 2052 (1984) in support of his argument (*id.*).

The state court record confirms that Petitioner's initial brief on direct appeal of his conviction did not fairly present a federal claim with regard to the claims asserted in Grounds Two, Three, Four, and Five of Petitioner's federal habeas petition (Ex. D). Now, any further attempt at exhaustion in the state courts would be futile, because Petitioner's claims would be procedurally barred under Florida law. *See* <u>Rodriquez v. State</u>, 919 So. 2d 1252, 1262 n.7 (Fla. 2005) (holding that issues were procedurally barred because they should have been, but were not, raised on direct appeal); <u>Smith v. State</u>, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").

As discussed *supra*, to overcome a procedural default such that this court may consider the merits of his claims, Petitioner must show cause for the default and prejudice resulting therefrom, or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. Although ineffective assistance of counsel which rises to the level of a constitutional deprivation can serve as cause for purposes of a procedural default analysis, the issue of ineffective assistance must first be presented as an independent claim in the state courts, and exhausted therein. Murray, 477 U.S. at 488; Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989).

With regard to Petitioner's claims, the procedural default occurred in Petitioner's direct appeal. In Florida, a claim of ineffective assistance of appellate counsel is actionable in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken. *See* Fla. R. App P. 9.141(d). Petitioner does not allege, nor does the state court record indicate, that he filed a state habeas petition or otherwise presented a claim of ineffective assistance of appellate counsel to the First DCA. Petitioner requests that this federal court stay the instant federal petition to permit him to present claims of ineffective assistance of appellate counsel to the state court, so that he may then satisfy the "cause" exception to the procedural bar (doc. 33 at 10).

In Rhines v. Weber, 544 U.S. 269, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005), the Supreme Court held that a federal district court has the discretion to stay a mixed habeas petition—a petition containing both exhausted and unexhausted claims—in "limited circumstances" not inconsistent with the "timeliness concerns reflected in [the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) ]." 544 U.S. at 277. The Court in Rhines held that a "stay and abeyance" of a mixed habeas petition is appropriate only if (1) the petitioner had "good cause" for failing to exhaust the claims in state court, (2) the unexhausted claims are "potentially meritorious," and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." 544 U.S. at 277–78.

The instant petition presents only claims that were exhausted, either because they were fairly presented to the state court (Ground One), or because they are procedurally barred and "technically exhausted" (Ground Two, Three, Four, and Five). *See* Woodford v. Ngo, 548 U.S. 81, 92, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) ("[I]f state court remedies are no longer available, . . . those remedies are technically exhausted, [ ] but exhaustion in this sense does not automatically entitle the

habeas petitioner to litigate his or her claims in federal court; instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding) (citing Gray v. Netherland, 518 U.S. 152, 161, 116 S. Ct. 2074, 135 L. Ed. 2d 457 (1996); Coleman, 501 U.S. at 744–51). Further, the federal petition here presents no substantive claim of ineffective assistance of appellate counsel. Because all claims of the petition are exhausted, Rhines is inapplicable. *See, e.g.*, Garrett v. Tucker, No. 3:09cv468/MCR/CJK, 2012 WL 4038497, at *12–13 (N.D. Fla. Aug. 9, 2012) (unpublished) (denying petitioner's request to stay federal habeas case to permit petitioner to attempt to pursue an ineffective assistance of appellate counsel claim in state court to establish cause for his procedurally defaulted federal claim), *Report and Recommendation Adopted by* 2012 WL 4039684 (N.D. Fla. Sept. 13, 2012) (unpublished); Shackleford v. Brunsman, No. 3:10cv357, 2011 WL 665600, at *3 (S.D. Ohio, Feb. 11, 2011) (concluding that the stay and abeyance procedure permitted under Rhines does not apply to a petition containing only exhausted claims; "Shackleford's Motion For Stay, moreover, seeks to litigate not only an unexhausted claim but one not raised in his petition. In this circumstance, the stay and abey procedure outlined in Rhines does not apply."); Hotz v. Pierce, No. 3:08cv00850, 2011 WL 2941290 (S.D. Ill. Dec. 13, 2010) (holding Rhines inapplicable because the petition contained only exhausted claims, and none of the claims the petitioner intended to assert in his return to state court were included in the pending federal petition); McClure v. Ozmint, No. 2:06–1076–HMH–RSC, 2007 WL 1656227, at *8 (D.S.C. June 5, 2007) (holding Rhines inapplicable because the petition contained only procedurally defaulted, and thus exhausted, claims). Moreover, Petitioner has not shown "good cause" for failing to exhaust his ineffective assistance of appellate counsel claims in state court prior to filing the instant federal habeas case. This court therefore will not review Petitioner's procedurally barred claims of trial court error asserted on Grounds Two, Three, Four, and Five, and will not stay this case pending Petitioner's attempt to pursue an ineffective assistance of appellate counsel claim in state court.

## V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 24th day of January 2014.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**